UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 16-21525-CIV-KING

MIGUEL DURON,

    Plaintiff,

vs.

LINDA SWACINA, ENID STULZ, and
UNITED STATES CITIZENSHIP AND
IMMIGRATION SERVICES Hialeah
Field Office,

    Defendants.
_____/

## FINAL ORDER OF DISMISSAL

**THIS MATTER** comes before the Court upon Defendants' Motion to Dismiss (DE 8) and Memorandum of Law in Support of Defendants' Motion to Dismiss (DE 8-1). The Court has additionally considered Plaintiff's Response in Opposition to Defendants' Motion to Dismiss (DE 15) and Defendants' Reply in Support of Their Motion to Dismiss (DE 18).

### I. INTRODUCTION

This is an action for judicial review of the denial of an application for adjustment of immigration status, brought pursuant to the Administrative Procedures Act ("APA"), 5 U.S.C. § 701 *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. § 2201. Plaintiff's one-count Complaint (DE 1) seeks a declaration of the Court that Defendant United States Citizenship and Immigration Services's ("USCIS") denial of Plaintiff's application to adjust his immigration status to that of a lawful permanent resident was arbitrary and capricious, or otherwise not in accordance with the law, because Plaintiff was eligible for adjustment of

1

status by virtue of his Temporary Protected Status ("TPS") and/or grant of advance parole. Plaintiff additionally seeks an order of the Court directing USCIS to re-open and re-adjudicate Plaintiff's application for adjustment of status. Defendants argue the Complaint should be dismissed because USCIS correctly determined Plaintiff was ineligible for adjustment status irrespective of his TPS, due to his failure to maintain continuously a lawful status since his entry into the United States. For the reasons stated herein, the Court finds Defendants' Motion should be granted and this matter should be dismissed.

## II. BACKGROUND[1]

Plaintiff Miguel Duron, a native and citizen of Honduras, entered the United States without inspection in December of 1997. On January 5, 1999, the United States Attorney General designated Honduras under the TPS program after the country experienced devastation resulting from Hurricane Mitch. *See* 8 U.S.C. § 1254a(b)(1)(B); "Designation of Honduras Under the Temporary Protected Status Program," 64 Fed. Reg. 524-26, 1999 WL 1703 (1999). On August 12, 1999, Duron applied for TPS pursuant to 8 U.S.C. § 1254a(a)(1). Duron was granted TPS on April 7, 2000. As a TPS beneficiary, he is temporarily protected from removal and is eligible for employment within the United States. *See* 8 U.S.C. §1254a(a)(1).[2]

On July 9, 2001, Duron married a lawful permanent resident. *See* DE 8-2. On December 13, 2014, after a trip abroad, Duron was paroled back into the United States. In February of 2015, Duron filed a Form I-485, Application to Register Permanent Resident or

---

[1] The facts alleged in the Complaint are not in dispute. DE 8-1 at 2; DE 15 at 3.
[2] Since 1999, the Secretary of the Department of Homeland Security ("DHS") has periodically extended TPS eligibility for Honduran nationals, and Duron has re-registered as needed following his initial registration. *See* 79 Fed. Reg. 62, 170-76, 2014 WL 5218973 (2014) (extending Honduras' TPS designation).

2

Adjust Status under 8 U.S.C. § 1255(a), as a second-preference relative (spouse of a lawful permanent resident).[3] On September 30, 2015, USCIS denied Duron's application to adjust status, concluding Duron failed to demonstrate statutory eligibility for adjustment because he was in the United States without lawful immigration status prior to his grant of TPS.

The denial of Duron's petition was based upon the exception to eligibility for adjustment found at 8 U.S.C. § 1255(c)(2), which states adjustment shall not be available to "an alien . . . who has failed . . . to maintain continuously a lawful status since entry into the United States[.]" Indeed, USCIS determined that, although Duron had traveled outside the United States and been paroled back into the United States on December 13, 2014, the "departure and subsequent reentry of an individual who has not maintained a lawful immigration status on any previous entry into the United States does not erase the [§ 1255(c)(2)] bar to adjustment of status." DE 1-3 (citing 8 C.F.R. § 245.1(d)(3)).

### III. LEGAL STANDARDS

#### A. Motion to Dismiss

To survive a Rule 12(b)(6) motion, a complaint must include "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). As a corollary, allegations absent supporting facts are not entitled to this presumption of veracity. *Id.* at 681.

---

[3] Duron's wife previously filed a Form I-130, Petition for Alien Relative, on his behalf, which USCIS approved on April 17, 2006.

3

When evaluating a motion to dismiss, the Court must take all of the well-pled factual allegations as true. *Id.* at 664. However, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 663. And, the Court's duty to accept the factual allegations in the complaint as true does not require it to ignore specific factual details "in favor of general or conclusory allegations." *Griffin Indus., Inc. v. Irvin,* 496 F.3d 1189, 1205-06 (11th Cir. 2007). The Court must dismiss a complaint that does not present a plausible claim demonstrating entitlement to relief.

### B. Judicial Review under the Administrative Procedure Act

The APA permits courts to set aside agencies' decisions only if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A). The arbitrary and capricious standard of review is a narrow and highly deferential standard. *See Nat'l Ass'n of Home Builders v. Def. of Wildlife,* 551 U.S. 644, 658 (2006). Under this standard, the Court "presume[s] the validity of agency action." *Sw. Bell Tel. Co. v. FCC,* 168 F.3d 1344, 1352 (D.C. Cir. 1999). Thus, "a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency." *Sierra Club v. Johnson,* 541 F.3d 1257, 1264–65 (11th Cir. 2008) (citing *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.,* 467 U.S. 837, 844 (1984)). The Court may uphold an agency decision if the agency engaged in reasonable gap-filling in light of the legislature's design. *Scheerer v. U.S. Att'y Gen.,* 513 F.3d 1244, 1250 (11th Cir. 2008). Additionally, "deference to the agency is especially appropriate in the immigration context where officials exercise especially sensitive political functions that implicate questions of foreign relations." *Id.* (citing *INS v. Aguirre-Aguirre,* 526 U.S. 415, 425 (1999)).

4

Review of an agency's interpretation of a statute follows the two-step analysis described in *Chevron*. *See Animal Legal Def. Fund v. U.S. Dep't of Agric.*, 789 F.3d 1206 (11th Cir. 2015). First, a court must ask whether "Congress has directly spoken to the precise question at issue." *Chevron*, 467 U.S. at 482. If the statute "is silent or ambiguous with respect to the specific issue," then courts must determine "whether the agency's [interpretation] is based on a permissible construction of the statute." *Id.* at 842–43. Courts must be "mindful that considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer." *Gulfcoast Med. Supply, Inc. v. Sec'y, Dep't of Health and Human Servs.*, 486 F.3d 1347, 1351 (11th Cir. 2006).

The agency's interpretation "governs if it is a reasonable interpretation of the statute—not necessarily the only interpretation, nor even the interpretation deemed *most* reasonable by the courts." *Entergy Corp. v. Riverkeeper, Inc.*, 556 U.S. 208 (2009) (emphasis in original). Where the agency's construction of a statute is expressed in a non-precedential opinion, the deference due to the decision "depend[s] upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncement, and all those factors which give it power to persuade, if lacking power to control." *Arriaga v. Florida Pac. Farms, L.L.C.*, 305 F.3d 1228, 1238 (11th Cir. 2002) (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)).

## IV. DISCUSSION

The issue before the Court is whether an alien recipient of TPS under 8 U.S.C. § 1254a, who was paroled into the United States under a grant of advance parole, is eligible for adjustment to lawful permanent resident status pursuant to § 1255(a) even though he previously entered the United States without inspection and was unlawfully present in the

5

United States until he was granted TPS. USCIS argues Plaintiff's inability to demonstrate he continuously maintained lawful status since his entry into the United States in 1997 acts as a bar to Plaintiff's eligibility for adjustment of status pursuant to §§ 1255(a) and (c)(2). Plaintiff argues he is eligible for adjustment by virtue of his TPS and the benefits which accrue to TPS recipients pursuant to § 1254a(f)(4). Specifically, Plaintiff argues that, pursuant to § 1254a(f)(4), he is "considered as being in, and maintaining, lawful status as a nonimmigrant" and this TPS benefit satisfies or overcomes § 1255(c)(2)'s continuous-lawful-status requirement. Resolving this issue requires an analysis of the language of, and a determination of the interplay between, the TPS and status adjustment statutes.

### A. Temporary Protected Status

The Attorney General is authorized to designate nationals of a foreign state with TPS in cases where an ongoing armed conflict, an environmental disaster, or other extraordinary and temporary conditions prevent the safe return of a foreign national to the state where the national is a citizen. 8 U.S.C. § 1254a(b)(1). Individuals granted TPS are not subject to removal from the United States during the period in which such status is in effect, and aliens granted TPS are authorized to engage in employment in the United States. 8 U.S.C. § 1254a.

With respect to "benefits and status of [TPS recipients] during period of temporary protected status[,]" the TPS statute states,

> *During a period in which an alien is granted temporary protected status* under this section—
>
> (1) the alien shall not be considered to be permanently residing in the United States under color of law;
>
> (2) the alien may be deemed ineligible for public assistance by a State (as defined in section 1101(a)(36) of this title) or any political subdivision thereof which furnishes such assistance;

6

(3) the alien may travel abroad with prior consent of the Attorney General; and

(4) *for purposes of adjustment of status under section 1255 of this title* and change of status under section 1258 of this title, *the alien shall be considered as being in, and maintaining, lawful status as a nonimmigrant.*

8 U.S.C. § 1254a(f) (emphasis added).

### B. Application for Status Adjustment

Adjustment of immigration status to that of a lawful permanent resident pursuant to § 1255 is available to aliens who have been inspected and paroled into the United States if:

(1) the alien makes an application for such adjustment,

(2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and

(3) an immigrant visa is immediately available to him at the time his application is filed.

8 U.S.C. §1255(a).

However, adjustment of status pursuant to §1255(a) is unavailable to any applicant who "has failed (other than through no fault of his own or for technical reasons) to maintain continuously a lawful status since entry into the United States[.]" 8 U.S.C. § 1255(c)(2).

### C. Analysis

It is undisputed that Plaintiff satisfies the threshold requirements of § 1255(a). It is additionally undisputed that Plaintiff initially entered and resided in the United States unlawfully prior to his receipt of TPS. At issue in this matter is whether the "lawful status" benefit accruing to TPS recipients pursuant to §1254a(f)(4) can overcome the § 1255(c)(2) bar to adjustment of status for aliens unable to demonstrate they "*maintain[ed] continuously a lawful status since entry into the United States[.]*" 8 U.S.C. §§ 1254a(f)(4), 1255(c)(2).

7

Plaintiff argues this issue presents a "novel question of statutory interpretation" and urges the Court to hold that § 1254a(f)(4)'s unambiguous grant of lawful status cures any perceived ineligibility for failure to continuously maintain lawful status under § 1255(c)(2).

### 1. The Unambiguous Language of the Statutes Establish Plaintiff's Ineligibility for Adjustment of Status

Upon consideration, the Court concludes USCIS correctly determined Plaintiff is ineligible to adjust his status pursuant to § 1255. Under the plain language of §§ 1254a(f) and 1255(c)(2), Plaintiff is ineligible to adjust his status because of his initial entry without inspection in December of 1997. The plain language of § 1254a(f)(4) indicates that the TPS benefit of being considered to be "being in, and maintaining, lawful status" applies only to the time during which an alien has TPS, and not to periods of unlawful status before TPS was granted. Plaintiff's initial entry was prior to his receipt of TPS, which occurred in 2000. Therefore, Plaintiff is ineligible for adjustment pursuant to § 1255 due to his failure to "maintain continuously" lawful status since his entry into the United States, as required by § 1255(c)(2).

Section 1254a(f) contains a clear temporal qualifier that limits the period to which subsection (4)'s lawful-status benefit is applicable. Moreover, the temporal qualifier plainly limits the benefit to the period during which an alien has TPS. The construction of the statute does not support a reading which would extend the lawful-status benefit to cover periods prior to receipt of TPS. Particularly telling is the fact that the statute is written in the present and future tenses. Specifically, for the benefits under subsection (f) to accrue, TPS must first presently be granted. *See* 8 U.S.C. § 1254a(f) ("During a period in which an alien *is granted* temporary protected status . . . .") (emphasis added). Following the grant of TPS, the alien

8

"*shall be considered*" to be in lawful status as a nonimmigrant. 8 U.S.C. § 1254a(f)(4) (emphasis added). The use of the word "shall" clearly speaks to future conduct, and, when combined with the use of the present progressive tense in the remaining portion of subsection (4) ("shall be considered as *being in, and maintaining,* lawful status[,]"), necessarily indicates that subsection (4) has only prospective effect. Had Congress desired the benefit to apply to periods prior to receipt of TPS, the statute would have been worded differently.[4]

Having found Plaintiff's TPS benefits have no effect on his unlawful status prior to his receipt of TPS, the Court further concludes Plaintiff cannot satisfy the eligibility requirements for adjustment of status pursuant to § 1255. While it is undisputed that Plaintiff was paroled into the United States in 2014, and his paroled re-entry satisfies § 1255(a)'s threshold requirements, the eligibility inquiry does not end there. By the plain terms of the statute, the adjustment available pursuant to subsection (a) "shall not be applicable to . . . an alien . . . who has failed . . . to maintain continuously a lawful status since entry into the United States." 8 U.S.C. § 1255(c)(2). Plaintiff is unable to demonstrate he maintained continuously a lawful status since entry into the United States in 1997. Therefore, USCIS properly denied Plaintiff's application for adjustment of status, and Plaintiff has failed to state a claim demonstrating entitlement to relief in the above-styled action.

### 2. USCIS's Interpretation is Entitled to Deference

The language of §§ 1254 and 1255 is unambiguous, and USCIS's interpretation of the statutes in its denial of Plaintiff's application to adjust status was reasonable and consistent

---

[4] For instance, Congress might have written, "During a period in which an alien is granted temporary protected status under this section . . . for the purposes of adjustment of status under section 1255 of this title . . . , the alien shall be considered *to have been in, and maintained,* lawful status as a nonimmigrant."

9

with the plain language of the statute. As such, the Court is bound to give effect to the unambiguously expressed intent of Congress and to dismiss Plaintiff's Complaint. *See Chevron*, 467 U.S. at 842–43. However, even if the statutory language is ambiguous the Court would defer to USCIS's reasonable and consistent interpretation of the statute under *Skidmore*. *See Skidmore*, 323 U.S. at 140.

USCIS' interpretation is reasonable and merits *Skidmore* deference because it is consistent with: 1) prior agency interpretations and 2) Board of Immigration Appeals ("BIA") precedent addressing maintaining lawful status. *See Quinchia v. U.S. Att'y Gen.*, 552 F.3d 1255, 1259 (11th Cir. 2008).

USCIS's decision denying Plaintiff's adjustment application is consistent with prior agency interpretations of the relevant statutory language. In a legal opinion addressing hypothetical facts similar to those of this case, the legacy Immigration and Naturalization Service ("INS") General Counsel determined that "[u]nder Section [1254a(f)(4)], an alien is to be considered as satisfying the requirement of Section [1255(c)(2)] only so long as the alien is in TPS. Section [1254a(f)(4)] does not make lawful the alien's unlawful presence in the United States prior to the granting of TPS." Genco Op. No. 91-27, 1991 WL 1185138 (INS Mar. 4, 1991). Notably, the Eleventh Circuit has in the past deferred to the INS General Counsel's legal opinion when considering the interplay of 8 U.S.C. § 1254a(f)(4) and 1255(a). *See Serrano v. U.S. Att'y Gen.*, 655 F.3d 1260, 1265–66 (11th Cir. 2011).

Additionally, USCIS's interpretation is consistent with published decisions of the BIA. *See* 8 C.F.R. § 1003.1(d)(1) (indicating the BIA's precedential decisions are binding on USCIS). In particular, USCIS's interpretation is consistent with BIA precedent commanding compliance with 8 U.S.C. § 1255(c)(2) in order to adjust status. *See In re: L-K*, 23 I. & N.

10

Dec. 677, 678 (BIA 2004) ("Adjustment of status under section [1255] is generally unavailable to 'an alien . . . who has failed . . . to maintain continuously a lawful status since entry into the United States.'").[5]

Accordingly, the Court finds the validity of USCIS's reasoning and its consistency with earlier pronouncements entitles USCIS's position to deference under *Skidmore*. *See* 323 U.S. at 140.

## V. CONCLUSION

Therefore, it is **ORDERED, ADJUDGED,** and **DECREED** that Defendants' Motion to Dismiss **(DE 8)** be, and the same is, hereby **GRANTED** and Plaintiff's Complaint **(DE 1)** be, and the same is, hereby **DISMISSED WITH PREJUDICE.** The Clerk shall **CLOSE** this case.

**DONE AND ORDERED** in Chambers at the James Lawrence King Federal Justice Building and United States Courthouse, Miami, Florida, this 12th day of December, 2016.

JAMES LAWRENCE KING
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF FLORIDA

Cc: All Counsel of Record

---

[5] Moreover, in an unpublished opinion, the BIA found that TPS does not allow an alien to adjust status where they were previously ineligible. *See* DE 8-4, *Matter of Alvenga-Torres*, No. 20530, at *6 (BIA 2014).